# In the United States Court of Federal Claims

No. 15-1244C
(Filed Under Seal: March 1, 2016)
(Reissued for Publication: March 2, 2016)*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| CHE CONSULTING, INC., | * | Bid Protest; FSS Contract; Department of |
| | * | Defense; Defense Logistics Agency; |
| Plaintiff, | * | Consolidation of Procurement for Hardware |
| | * | and Software Maintenance Services; Motion |
| v. | * | to Dismiss; Standing; Cross-Motions for |
| | * | Judgment on the Administrative Record; |
| THE UNITED STATES, | * | Motion for Leave to Conduct Discovery and |
| | * | to Supplement the Administrative Record; |
| Defendant. | * | Motion to Strike |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Ryan K. Manger, St. Louis, MO, for plaintiff.

Sosun Bae, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

In this postaward bid protest, plaintiff CHE Consulting, Inc. ("CHE"), challenges the acquisition of hardware and software maintenance services by the Defense Logistics Agency ("DLA") of the United States Department of Defense ("DOD"). Specifically, plaintiff lodges objections against the solicitation, the manner in which the procurement was conducted, and the award of the contract to Affigent, LLC ("Affigent"). Before the court are defendant's motion to dismiss the protest, in part, on standing grounds; the parties' cross-motions for judgment on the administrative record; plaintiff's motion for leave to conduct discovery and to supplement the administrative record; and defendant's motion to strike two declarations offered by plaintiff. For the reasons set forth below, the court grants defendant's motion to dismiss, denies plaintiff's motion for judgment on the administrative record, and grants defendant's cross-motion for judgment on the administrative record. In addition, the court denies plaintiff's motion for leave to conduct discovery and to supplement the administrative record, and grants defendant's motion to strike.

---

* The court provided the parties with an opportunity to suggest redactions to this ruling, but in a March 1, 2016 joint status report, they indicated that no redactions were necessary.

# I. BACKGROUND

## A. Factual History

On September 21, 2015, the DLA Contracting Services Office in Philadelphia, Pennsylvania issued solicitation number SP4701-15-Q-0299, a Request for Quotations ("RFQ") to provide Oracle Storage Area Network and Backup Equipment Maintenance Support.[1] AR 32-33.  The DLA posted the solicitation on the General Services Administration ("GSA") e-Buy website using North American Industry Classification System ("NAICS") code 541519, id. at 32-33, and indicated in the solicitation that it would place a firm-fixed-price order against a GSA Federal Supply Schedule ("FSS") contract held by a contractor with an Oracle Enterprise Software Initiative ("ESI") agreement, id. at 33-34.  The DLA chose this procurement approach because no DOD contract vehicle provided for the acquisition of the required items.  Id. at 24-25.

In the solicitation, the DLA explained that it intended to evaluate proposals and make an award without discussions.  Id. at 34.  It further indicated that it would make an award on a "Lowest Fair and Reasonable Price, Technically Acceptable" basis.  Id. at 35.  And, it specified that the period of performance for the contract would be from September 30, 2015, through May 31, 2016.  Id. at 33.

The DLA received three proposals in response to the solicitation.  Id. at 110, 125, 173.  All three proposals were deemed technically acceptable because they were considered "consistent with the basis for award" and demonstrated each offeror's "ability to meet [every] aspect" of the solicitation requirements.  Id. at 230.  The DLA then concluded that Affigent should be awarded the contract because it proposed the lowest price of $393,172.32, its price was fair and reasonable, and it was responsible.  Id. at 241-42, 311.  The DLA and Affigent executed the contract on September 29, 2015.  Id. at 311.

## B. Procedural History

On October 23, 2015, plaintiff filed the present protest, contending that the solicitation, the manner in which the DLA conducted the procurement, and the DLA's contract award to Affigent were arbitrary, capricious, an abuse of discretion, and contrary to law.  Plaintiff filed a motion for judgment on the administrative record, and defendant filed a cross-motion for judgment on the administrative record and motion to dismiss, in part, plaintiff's protest.  In addition, plaintiff filed a motion for leave to conduct discovery and to supplement the administrative record, and defendant filed a motion to strike two declarations attached to plaintiff's dispositive motion.  All motions are fully briefed, and the court heard argument on February 26, 2016.

---

[1] The court derives the facts in this section from the Administrative Record ("AR").

## II.  LEGAL STANDARDS

### A.  Bid Protests

The United States Court of Federal Claims ("Court of Federal Claims") has "jurisdiction to render judgment on an action by an interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1) (2012).  To be considered an "interested party," a protestor "must establish that it '(1) is an actual or prospective bidder; and (2) possess[es] the requisite direct economic interest.'"  Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1382 (Fed. Cir. 2012) (citations omitted); accord Am. Fed'n of Gov't Emps. v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (holding that interested parties are those "prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract").  In postaward bid protests, to demonstrate direct economic interest, a protestor "must show it had a 'substantial chance' of receiving the contract."  Id. (citations omitted).

When resolving a bid protest, the court reviews the challenged agency action pursuant to the standards set forth in 5 U.S.C. § 706.  Id. § 1491(b)(4).  Although section 706 contains several standards, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A):  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  Under this standard, the court "may set aside a procurement action if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In evaluating whether an agency official's actions were rational, the "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.'"  Impresa, 238 F.3d at 1333 (citation omitted).  Contracting officials may properly exercise wide discretion in applying procurement regulations.  Id. at 1332; Electro-Methods, Inc. v. United States, 7 Cl. Ct. 755, 762 (1985).  "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."  Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989).  In other words, the court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions.  Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285-86 (1974).  Consequently, as long as a rational basis is articulated and relevant factors are considered, the agency's action must be sustained.  Id.  A protestor's mere disagreements with the government's assessment of proposals are not "nearly enough" to demonstrate that the agency's actions were arbitrary and capricious.  CRAssociates, Inc. v. United States, 102 Fed. Cl. 698, 717-18, aff'd, 475 F. App'x 341 (Fed. Cir. 2012).

Ultimately, "[t]he arbitrary and capricious standard applicable [in bid protests] is highly deferential."  Advanced Data Concepts v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

Thus, when a protestor claims that the procuring agency's decision violates a statute, regulation, or procedure, it must show that the violation was "clear and prejudicial." Impresa, 238 F.3d at 1333 (internal quotation marks omitted). Indeed, this court will "interfere with the government procurement process 'only in extremely limited circumstances.'" EP Prods., Inc. v. United States, 63 Fed. Cl. 220, 223 (2005) (quoting CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983)).

If the court concludes that a protestor has met its burden under 5 U.S.C. § 706, it must then determine whether injunctive relief is appropriate. In considering a request for a permanent injunction, the court considers (1) whether the plaintiff has succeeded on the merits; (2) whether the plaintiff will suffer irreparable harm if injunctive relief is denied; (3) whether the balance of hardships for the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

## B. Motions to Dismiss

Defendant moves to dismiss plaintiff's protest, in part, for lack of standing pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). However, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). If the court finds that it lacks jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

## C. Motions for Judgment on the Administrative Record

The parties both move for judgment on the administrative record pursuant to RCFC 52.1. In ruling on such motions, "the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)[2]). Because the court makes "factual findings . . . from the record evidence," judgment on the administrative record "is properly understood as intending to provide for an expedited trial on the administrative record." Bannum, 404 F.3d at 1356.

## D. Supplementation of the Administrative Record

Finally, the parties have filed motions concerning what materials should be considered by the court in this protest. Generally, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing

---

[2] The decision in Bannum was based upon then-RCFC 56.1, which was abrogated and replaced by RCFC 52.1. RCFC 52.1 was designed to incorporate the decision in Bannum. See RCFC 52.1, Rules Committee Note (June 20, 2006).

court." Camp v. Pitts, 411 U.S. 138, 142 (1973). An administrative record typically contains the materials developed and considered by an agency in making a decision subject to judicial review. See id. at 142-43 (remarking that an agency's finding must be "sustainable on the administrative record made" by the agency at the time of its decision); Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345, 349-50 (1997) ("[T]he primary focus of the court's review should be the materials that were before the agency when it made its final decision."). The administrative record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act]." Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009); accord id. at 1380 ("[S]upplementation of the record should be limited to cases in which the 'omission of extra-record evidence precludes effective judicial review.'" (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000), aff'd, 398 F.3d 1342 (Fed. Cir. 2005))).

If a protestor asserts that discovery is necessary, it must provide "concrete and specific reasons," and not simply "nebulous assertions." DataMill, Inc. v. United States, 91 Fed. Cl. 722, 732 (2010). Further, a protestor alleging that discovery is necessary to obtain evidence of bad faith must assert "sufficient well-grounded allegations of bias to support supplementation." Inforeliance Corp. v. United States, 118 Fed. Cl. 744, 748 (2014) (internal quotation marks omitted). Moreover, the protestor "must persuade the Court that discovery could lead to evidence which would provide the level of proof required to overcome the presumption of regularity and good faith." Beta Analytics Int'l, Inc. v. United States, 61 Fed. Cl. 223, 226 (2004).

## III. DISCUSSION

### A. The Parties' Cross-Motions for Judgment on the Administrative Record and Defendant's Motion for Partial Dismissal

#### 1. The Parties' Respective Positions

##### a. Plaintiff's Factual Allegations and Legal Arguments

Plaintiff claims to be "a small business and preeminent provider of computer hardware engineering services to the federal government, various state governments and private industry." Pl.'s Mot. 7. It contends that it is the "only third party provider with an agreement from the Original Equipment Manufacturer ('OEM'), Oracle," to provide "replacement microcode, microcode updates, firmware, firmware updates, and engineering changes on select Oracle (SUN/STK) equipment assets," and that it holds a GSA FSS "agreement for Oracle (STK) hardware maintenance services, as well as other products." Id. at 7-8. Plaintiff further states that it has been providing computer hardware maintenance services at DLA facilities for more than twelve years, and that its recent work with the DLA includes three one-year term contracts for maintenance services on STK robotic tape libraries and tape drives in Richmond and Fort Belvoir, Virginia. Id. at 8. According to plaintiff, the most recent contract was completed on July 25, 2015 ("July 2015 contract"). Id.

In support of its motion for judgment on the administrative record, plaintiff makes four arguments.  First, plaintiff argues that the DLA's tying of minimal software support to its procurement of Oracle hardware maintenance was arbitrary and capricious and unduly restricts competition.  Id. at 22-27.  Specifically, plaintiff contends that (1) the DLA "failed to justify its decision to combine the previously separately procured software maintenance and hardware maintenance services, or do any such analysis whatsoever," even though the DLA previously obtained these services by separate contracts, and even though plaintiff had been providing "hardware maintenance services for its customers, including DLA, for 17 years," id. at 23-24; (2) the Brand Name Limited Source Justification ("LSJ") "prepared in connection with this procurement" does not detail how the DLA "made the decision to restrict the competition to providers who can only provide both hardware and software maintenance services," id. at 24; (3) contrary to the text of the LSJ, the "failure 'to renew this maintenance will expose DLA to eventual hardware failures, noncompliance, and support refusal, resulting in mission failure,'" id.; (4) contrary to the text of the LSJ, the DLA knew that "[a]t the current time ORACLE [has] agreements with 3rd party support organizations [such as plaintiff] to resell hardware and software system support," id. at 25; (5) "[t]he tying of software support and licensing is further suspect as the software line items make up a relatively small portion of the Contract," id.; (6) it is unclear whether the DLA "always intended to combine software maintenance with the hardware maintenance procurement," id.; (7) even though the LSJ requires the "procurement of Oracle hardware and software maintenance support to renew maintenance that will lapse this year on existing Oracle hardware and all associate software packages," the DLA was aware "that Plaintiff's prior maintenance contract did not include software," id. at 26; (8) the fact that the DLA had to issue both FSS and ESI agreements proves that it did not have to purchase software support and hardware maintenance services in tandem, id.; (9) the DLA could easily have issued one RFQ for hardware maintenance under the FSS and one RFQ for software under the ESI agreement, id.; and (10) bundling the contract requirements was a violation of the Small Business Act, which requires agencies to "avoid unnecessary and unjustified bundling of contract requirements that precludes small business participation in procurements as prime contractors," id. at 27 (relying on15 U.S.C. § 631(j)(3)).

Second, plaintiff argues that the DLA violated the Competition in Contracting Act ("CICA") by soliciting hardware maintenance services without giving capable third-party providers an opportunity to bid.  Id. at 27-29.  According to plaintiff, the DLA failed to "conduct a full and open competition prior to selecting Affigent" in violation of the CICA even though it knew that plaintiff was "willing and able" to compete.  Id. at 27 (relying on 41 U.S.C. § 3301(a)(1)).  Specifically, plaintiff argues that as the expiration date of the July 2015 contract approached, it "informed DLA that it desired to renew its existing maintenance services contract in Richmond and Ft. Belvoir."  Id. at 8.  In response, states plaintiff, DLA Government Program Manager Allen Fleck indicated that plaintiff's contract would expire because the DLA planned to "consolidate its contract effort for all Oracle (STK and Sun Microsystem) products across the globe," including facilities where plaintiff had previously performed the same maintenance services.  Id. at 9.  As a result, plaintiff claims that it contacted Mr. Fleck on more than ten occasions to express its desire to renew its contract with the DLA or compete in any future procurement, and that Mr. Fleck told plaintiff that it was welcome to bid during the procurement, which would take place "around the beginning of September" 2015.  Id. at 27.  Ultimately, plaintiff claims, it did not participate in the procurement because it did not learn that the

solicitation "had been released" until after contract award. Id. at 15.  Plaintiff also argues that the DLA failed to make the solicitation available to plaintiff despite directly notifying Oracle resellers–who held ESI agreements for software, despite the contract also being for hardware support–and indirectly notifying other parties through listings on the GSA e-Buy or FedBizOpps websites. Id. at 15, 28.  Finally, plaintiff argues that that the contract ultimately awarded "did not result in the lowest overall cost alternative." Id. at 28.  According to plaintiff, because Oracle, the OEM, has a "pecuniary interest in seeing its resellers obtain the award over third parties like Plaintiff," and appears to have helped in the design of the Statement of Work ("SOW"),[3] id. at 25 n.8, it is clear that the solicitation was "designed to exclude Plaintiff as a potential offeror," id. at 25.

Third, plaintiff argues that the DLA improperly limited its posting of the RFQ to Oracle ESI agreement holders in violation of the CICA and Federal Acquisition Regulation ("FAR") Subpart 6.3. Id. at 29-30.  Specifically, plaintiff argues that (1) the DLA failed to "justify in writing the use of noncompetitive procedures, as required by the process laid out in FAR Subpart 6.3, prior to entering into a contract or even commencing negotiations for a contract," id. at 29; (2) by awarding the contract under a DOD ESI "Blanket Purchase Agreement and/or a broader GSA [FSS] contract," the DLA improperly excluded third-party providers like plaintiff, id. at 6, 29-30; and (3) the DLA violated the CICA "by awarding an FSS contract outside of [Affigent's] FSS contract" because plaintiff could not locate the hardware maintenance services listed in either Affigent's FSS or ESI agreements, id. at 30.

Finally, plaintiff argues that the DLA violated the CICA by posting the award, and presumably also the RFQ, under a misleading NAICS Code. Id. at 30-31.  According to plaintiff, "[t]he official public medium for providing notice of contracting actions by federal agencies is the FedBizOpps website, which has been designated by statute and regulation as the government-wide point of entry." Id. at 30.  In this case, plaintiff argues that it was "improper and misleading" for the DLA to use NAICS Code 541519 in the RFQ because (1) it relates to "computer related services, including computer disaster recovery services or software installation service," rather than "hardware maintenance," id. at 31; and (2) "it applies to equipment manufacturing–not maintenance," id.  As a result, plaintiff contends, it was prevented from learning about the contract award. Id.

### b. Defendant's Arguments

Defendant first moves to dismiss the bulk of plaintiff's claims for lack of standing.  As a threshold matter, defendant concedes that plaintiff has standing to challenge whether the DLA acted lawfully by including both software and hardware services in the procurement. See Def.'s

---

[3]  Plaintiff argues that Oracle's assistance is demonstrated by the inclusion of "reinstatement fees" in the SOW that are charged only by the OEM or its resellers, and by the fact that the DLA obtained one of the two cost proposals for the Independent Government Cost Estimate ("IGCE") directly from Oracle.  Pl.'s Mot. 25 n.8.

Mot. 10; Oral Argument at 2:40:42.[4]  However, with respect to plaintiff's remaining claims, defendant argues that there is no statute, regulation, or case law that prohibited the DLA from consolidating its hardware and software support requirements into one contract and that because plaintiff only provided hardware support, it would not have been a technically acceptable offeror. Def.'s Mot. 10.  In other words, defendant argues, because plaintiff did not have a substantial chance of winning the contract, a prerequisite to establishing standing, its remaining claims should also be dismissed.  Id. at 10-11.

Then, in support of its motion for judgment on the administrative record, defendant makes three arguments.  First, defendant argues that the DLA properly consolidated software and hardware requirements.  Id. at 11-14.  According to defendant, the issue is not whether any regulation or statute authorizes the DLA to consolidate requirements, but whether any regulation or statute precludes such consolidation:  "Absent such a statutory or regulatory violation, agencies have broad discretion to decide what to procure and how to procure it."  Id. at 12.  In addition, defendant argues that, pursuant to Defense Federal Acquisition Regulation Supplement ("DFARS") 207.170-3, "agencies are not required to provide market research, identification of alternative contracting approaches, or indeed any formal determination justifying consolidation of contract requirements if the estimated total value is under $2 million," a threshold that defendant contends is not met in this case.  Id.  Alternatively, defendant claims that even if it were required to provide such justification, it can be found in the DOD Fiscal Year 2016 Information Technology President's Budget Request, which requires the DLA to "work diligently to consolidate [information technology] contracts."  Id. at 12-13.  Finally, defendant contends that the DLA did not violate the Small Business Act because Affigent, as well as the other two offerors, are small business concerns.  Id. at 13.  Thus, defendant asserts, plaintiff "cannot claim that any 'bundling' of contract requirements precluded small business participation."  Id.

Second, defendant argues that the DLA did not violate the CICA.  Id. at 14-16. According to defendant, plaintiff's claim that the DLA failed to provide it with an opportunity to bid even though it was aware of its interest in doing so is of no moment because the only individual who purportedly knew of that interest was a DLA employee who worked in the Program Management Office, not the Contracting Services Office:  "The fact that one individual in the Program Management Office, not representative of DLA's knowledge in a procurement capacity, knew of CHE's interest is irrelevant and unnecessary to the Court's review of this action."[5]  Id. at 14.  In fact, defendant claims that the contracting officer did not learn about plaintiff until after the contract was awarded.  Id.  Moreover, defendant contends that even if plaintiff can establish that the DLA knew of plaintiff's interest, the CICA does not require agencies to inform specific companies regarding the existence of a solicitation in which they

---

[4]  The oral argument held on February 26, 2016, at 2 p.m. Eastern Standard Time was recorded using the court's Electronic Digital Recording system.  The times noted in citations to the oral argument refer to this recording.

[5]  The evidence–two declarations and several electronic-mail messages–cited by plaintiff in support of its contention that the DLA was aware of plaintiff's interest in the contract, is subject to a motion to strike, which is discussed below.

might be interested.  Id.  In further defense of its actions, defendant notes that the DLA provided a detailed LSJ authorizing and approving the procurement.  Id. at 15.  According to defendant, the LSJ relies on a provision of the FAR that permits "other than full and open competition," and that, contrary to plaintiff's claim, Oracle had no agreements with third parties to resell hardware and software support services.  Id. at 15-16.  Finally, defendant counters that plaintiff's argument that the contract was not awarded to the lowest bidder is without merit because plaintiff's decision not to charge "reinstatement fees" is unrelated to whether it would have submitted a lower-priced bid than Affigent.  Id. at 16.

Finally, defendant argues that the DLA did not err in its publication of the RFQ.  Id. at 16-19.  According to defendant, the DLA properly posted the solicitation on the GSA e-Buy website, making it "accessible and open to any firm with an active and current GSA registration under the utilized Schedule and [Special Item Number ("SIN")], not just ESI agreement holders."  Id. at 17.  Moreover, defendant argues that plaintiff cannot now claim that the DLA posted the award using an incorrect NAICS code because plaintiff failed to exhaust its administrative remedies as to this argument.  Id. at 18.  Alternatively, defendant argues that even if plaintiff had exhausted such remedies, the DLA appropriately exercised its discretion in selecting the posting code for the award, as supported by the fact that a representative of the Small Business Administration "reviewed and signed off on DLA's choice" of NAICS code.  Id. 18-19.

## 2.  Analysis

### a.  The DLA Did Not Violate the CICA or the FAR When It Consolidated the Procurement of Hardware and Software Services

As noted above, defendant concedes that plaintiff has standing to challenge the lawfulness of the DLA's decision to consolidate the procurement of hardware and software maintenance services into one contract.  Thus, the court first addresses plaintiff's contention that the DLA's decision to consolidate these services into one contract constituted bundling, as well as plaintiff's argument that consolidation violated the CICA and the FAR.

As a preliminary matter, the court finds that the DLA's consolidation of its of hardware and software services contracts did not constitute bundling.  Case law that interprets the pertinent statutes and regulations makes it clear that "to constitute bundling, a solicitation must: (1) consolidate two or more requirements that were previously procured under separate smaller contracts into a single contract, and (2) likely be unsuitable for award to a small business." Benchmade Knife Co. v. United States, 79 Fed. Cl. 731, 739 (2007) (citing 15 U.S.C. § 632(o)(2) and FAR 2.101).  First, the DLA's decision to obtain hardware and software maintenance support through one contract, instead of two separate contracts, was well within its discretion.  This conclusion is supported by the ruling of the United States Court of Appeals for the Federal Circuit ("Federal Circuit") in Tyler Construction Group v. United States, where the court evaluated the decision of the United States Army Corps of Engineers to acquire services for the design and construction of certain military buildings through an Indefinite Delivery/Indefinite Quantity ("IDIQ") contract.  570 F.3d 1329 (Fed. Cir. 2009).  In that case, the protestor argued that the government was not authorized by the FAR to use an IDIQ contract

for a "large scale" construction project.  Id. at 1332.  The Federal Circuit affirmed the trial court's denial of the protest, explaining that the "proper inquiry [wa]s not whether the FAR authorizes the use of IDIQ contracts for a procurement of construction, but whether there [wa]s any statutory or regulatory provision that precludes such use."  Id. at 1333.  The court held that it was "unaware of any such provision," and that the protestor had not identified any.  Id.  The court further held that under FAR 1.102(d), "government officers are authorized, indeed, encouraged, in exercising personal initiative in procurement matters, to assume that a specific strategy, practice, policy or procedure that is not addressed in the FAR nor prohibited by law . . . and that is in the best interests of the Government, is a permissible exercise of authority."  Id. (internal quotation marks omitted).  The court explained that "federal procurement entities . . . ha[ve] broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation."  Id. at 1334.  As the court held, "'[e]ffective contracting demands broad discretion.'"  Id. (quoting Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 958 (Fed. Cir. 1993)).  Thus, plaintiff's contention in this case that the DLA improperly consolidated its contracts is unpersuasive, because plaintiff cites to no provision of the FAR that prohibits such consolidation, and more broadly, because the DLA had wide discretion to consolidate.

Second, plaintiff does not demonstrate that the consolidated contract would "likely be unsuitable to a small business."  To the contrary, a small business concern was not only deemed technically acceptable, but was ultimately awarded the contract, as it was found to be "responsible" and its price was determined to be "fair and reasonable."  AR 110, 241-42, 311.  In addition, the other two offerors were small businesses.[6]  Further, the Small Business Administration reviewed and approved the NAICS code that the DLA used to post the solicitation.  Id. at 323.  Thus, because the contract was not "unsuitable for award to a small-business concern," 15 U.S.C. § 632(o)(2), it cannot be considered an example of bundling.

Equally unpersuasive are plaintiff's arguments that there were other means by which the DLA could have procured the desired services.  The DLA had the right to award the contract under the FSS program.  As the Federal Circuit has explained, "[t]he FSS was established by the [GSA] to provide Government agencies with a 'simplified process for obtaining commercial supplies and services at prices associated with volume buying.'"  Kingdomware Techs., Inc. v. United States, 754 F.3d 923, 925 (Fed. Cir. 2014) (quoting FAR 8.402(a)), cert. granted, 83 U.S.L.W. 3654 (U.S. June 22, 2015) (No. 14-916).  Further, "[u]nless otherwise specified by statute or regulation, an agency has wide discretion to decide the method of contracting to use, including the FSS."  Id.; accord Kingdomware Techs., Inc. v. United States, 107 Fed. Cl. 226, 231 (2012) ("[A]n agency generally retains unfettered discretion to select the procurement method it wishes to use and in particular, whether it wishes to meet its acquisition requirements using the FSS."), aff'd, 754 F.3d at 925.  Moreover, the Court of Federal Claims has previously held, interpreting the FAR, that "[o]rders placed against the FSS are deemed to satisfy the conditions of full and open competition and are not subject to the requirements of traditional procurement procedures."  Kingdomware Techs., 107 Fed. Cl. at 231 (citing FAR 8.404(a)).

---

[6]  Plaintiff conceded at oral argument that all three offerors were small businesses.  See Oral Argument at 2:14:50.

Indeed, "[t]he FAR specifies as a matter of contracting priority that an agency is encouraged to obtain goods and services from FSS contractors before purchasing from commercial sources . . . ." Kingdomware Techs., 754 F.3d at 925 (citing FAR 8.004).

In addition, plaintiff's contention that the LSJ contained a false statement is erroneous. The LSJ stated that "[a]t the current time ORACLE has no agreements with 3rd party support organizations to resell hardware and software system support." AR 106. Plaintiff argues that this statement is false because the DLA had a contract with plaintiff. Although plaintiff did have a contract with the DLA, the contract was limited to hardware system support. Thus, the statement in the LSJ that the DLA did not have any agreements to obtain both hardware and software system support was true, as plaintiff does not provide both types of support.[7]

In short, the DLA did not violate the CICA or the FAR when it consolidated the procurement of hardware and software maintenance services into one contract. Accordingly, the court denies plaintiff's motion for judgment on the administrative record and grants defendant's cross-motion for judgment on the administrative record on this issue.

### b. Plaintiff Lacks Standing to Bring Its Remaining Challenges to the Procurement

With respect to its remaining challenges to the procurement, plaintiff lacks standing to raise them in this court. FAR 8.405-2(c) "requires that when a federal agency elects to use the GSA FSS, the competition must be limited to schedule contractors that offer services that will meet the agency's needs." Three S Consulting v. United States, 104 Fed. Cl. 510, 520 (2012). Because plaintiff did not provide some of the services described in the solicitation (software support), it was not eligible to submit a proposal during the competition; in other words, it would not have been deemed a technically acceptable offeror. Plaintiff therefore did not have a substantial chance of being awarded the contract. Consequently, plaintiff does not possess the necessary direct economic interest that would qualify it as an interested party. The court must therefore grant defendant's motion to dismiss plaintiff's remaining challenges to the procurement for lack of standing. See also id. at 521-22 (holding that the protestor lacked "standing to challenge the contract award" because it was never eligible for award).

---

[7] Plaintiff contends that the DLA was required to provide a written justification for its decision to consolidate the hardware and software contracts. Plaintiff is mistaken. Under DFARS 207.170-3, if the value of a contract is less than two million dollars, an agency is not required to provide market research, identification of alternative contracting approaches, or any formal determination justifying consolidation of contracts. Here, the estimated value of the contract was $404,250.00, and the actual value of the contract was $393,172.32, well below the two million dollar threshold. Thus, the DLA was not obligated to provide a justification for its decision to consolidate the contracts. Nevertheless, the DLA did supply such a justification, in the form of the LSJ. Moreover, the DOD Fiscal Year 2016 Information Technology President's Budget Request calls on the DLA to work diligently to consolidate information technology contracts.

**c.  Alternatively, Plaintiff's Remaining Challenges to the Procurement Lack Merit**

Even if plaintiff possessed standing to bring its remaining challenges to the procurement, those challenges are without merit.

**i.  The DLA Did Not Err When Posting the Solicitation and Had No Obligation to Notify Plaintiff of the Solicitation**

First, plaintiff advances several arguments related to its lack of contemporaneous knowledge of the DLA's issuance of the solicitation–a fact not disputed by defendant–in support of its position that it is entitled to a permanent injunction of the contract award because the manner in which the DLA issued the solicitation was arbitrary, capricious, an abuse of discretion, and contrary to law.  These arguments are unconvincing.  The DLA posted the solicitation to the GSA e-Buy website, and as defendant correctly argues, if plaintiff had an active GSA e-Buy registration under the relevant schedule and SIN, it would have been able to access the solicitation.  Further, there is no merit to the argument that by using a "generic NAICS code," the DLA "disguised the true nature of th[e] procurement," which was to purchase hardware maintenance services.  Pl.'s Reply 17.  The solicitation contemplated the procurement of software maintenance services in addition to hardware maintenance services.  Thus, if the DLA had posted the solicitation using an NAICS code encompassing only hardware maintenance services, as plaintiff argues it should have, the DLA would have used an incorrect code.  By contrast, the code used by the DLA broadly covered "other computer related services," which properly encompassed the solicitation's requirement for both hardware and software services.  Moreover, even if the DLA had erred and used an incorrect NAICS code, plaintiff fails to demonstrate that it suffered prejudice.  Plaintiff does not provide software services, which were required by the contract regardless of the NAICS code used.  Thus, plaintiff would still not have been eligible to receive the contract.

In addition, although the NAICS code that the DLA used in this instance may have differed from those it used in the past, the DLA was under no obligation to apprise plaintiff of this fact or of the existence of the solicitation.  When an agency awards a contract under the FSS program, "no requirement mandates that contractors receive any advance notice of the agency's needs or the selection criteria."  Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 395 (1999) (citing FAR 8.404(a)).  More saliently, there is no "regulation, statutory provision, or applicable precedent requiring an incumbent to be solicited on a delivery order from an FSS schedule contract."  Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 648 (2001).  Ultimately, plaintiff "had no right whatsoever to receive an RFQ in the first instance."  Id. at 645.  Thus, whether plaintiff expressed its strong interest in the procurement to Mr. Fleck, or anyone else, is irrelevant.[8]  See also id. at 650 (noting that because the procuring agency had no

---

[8]  Although defendant notes that Mr. Fleck was not the contracting officer and that therefore his awareness of plaintiff's desire to submit an offer is not representative of the DLA's knowledge, this fact is irrelevant because, as the court has concluded, the DLA was under no obligation to notify plaintiff of the solicitation, irrespective of what DLA employees may or may not have known.

obligation to solicit the protestor regarding the subject delivery order, it was irrelevant that the protestor had previously expressed its strong interest in the order).

### ii.  The DLA Was Not Required to Publish the Solicitation on the FedBizOpps Website

Next, contrary to plaintiff's assertion, the DLA was not required to publish the solicitation on the FedBizOpps website.  Plaintiff relies on DFARS 205.205-70 to argue that because the DLA bundled two contracts into one, it was obligated to publish the solicitation on FedBizOpps.gov.  Under that provision,

> When a proposed acquisition is funded entirely using DOD funds and potentially involves bundling, the contracting officer shall, at least 30 days prior to the release of a solicitation or 30 days prior to placing an order without a solicitation, publish in FedBizOpps.gov (or any successor site) a notification of the intent to bundle the requirement.  In addition, if the agency has determined that measurably substantial benefits are expected to be derived as a result of bundling, the notification shall include a brief description of those benefits.

DFARS 205.205-70.  This requirement does not apply to the procurement at issue, however.  As described above, the DLA's decision to consolidate its hardware and software support requirements into one contract did not constitute bundling.  Thus, the DLA was not required to post the solicitation on the FedBizOpps website.  Accordingly, the DLA properly advertised the solicitation, foreclosing any argument by plaintiff that the DLA acted in a manner that was arbitrary, capricious, an abuse of discretion, or contrary to law.

### iii.  The DLA Did Not Draft the Solicitation to Exclude Plaintiff

Finally, plaintiff's argument that the DLA drafted the solicitation to exclude plaintiff and favor Oracle's resellers is also unavailing.  Because agencies have wide discretion when using the FSS program, the DLA acted well within its authority by designing the solicitation and conducting the procurement as it did.  Pursuant to Part 8 of the FAR, which "governs agency acquisitions made pursuant to the FSS program," Cybertech Grp., 48 Fed. Cl. at 648, "[t]he GSA schedule contracting office issues publications, titled Federal Supply Schedules, containing the information necessary for placing delivery orders with schedule contractors," FAR 8.401(a)-(b).  Then, "[o]rdering offices" can "issue orders directly to the schedule contractors for the required supplies or services. . . .  Because GSA has awarded the contractors indefinite delivery contracts or 'schedules' using competitive procedures, agencies are not required to obtain competition and determine reasonable prices."  Id.  Thus, because FAR Part 8 "contemplates agencies ordering off the schedule, no regulations govern the proper procedure for selecting contractors."  Ellsworth Assocs., Inc., 45 Fed. Cl. at 395 (citing FAR 8.401).  "This is consistent with the simplified and flexible approach Part 8 takes toward procurements.  To be sure, within the FSS program an agency may choose, for any number of reasons, to engage in a more comprehensive selection process than contemplated by the scheme."  Id.

In this case, the DLA chose to issue a solicitation to acquire hardware and software support services in a consolidated contract.  The DLA was entitled to place an order against the

FSS and obtain these services from Oracle's resellers directly, without conducting a competition. It was also well within the DLA's rights to issue a solicitation and assess proposals, as it did here. Further, because the DLA was allowed to place an order with Oracle's resellers directly, it was entitled to favor Oracle's resellers in the solicitation. For these reasons, plaintiff's claim that the solicitation improperly favored Oracle's resellers lacks merit.

In short, even if plaintiff possessed standing to bring its remaining challenges to the procurement, those challenges would be rejected by the court.[9]

### B. Plaintiff's Motion for Leave to Conduct Discovery and to Supplement the Administrative Record, and Defendant's Motion to Strike Plaintiff's Declarations

Plaintiff also moves for leave to conduct discovery and to supplement the administrative record. Plaintiff seeks to supplement the administrative record with six electronic-mail messages between itself and the DLA regarding its desire to submit a proposal during the procurement. Further, plaintiff moves to supplement the administrative record with the declarations of Dewey Garett, plaintiff's Government Maintenance Sales Executive, and David York, plaintiff's president and Chief Operating Officer, which are both attached to plaintiff's motion for judgment on the administrative record. In his declaration, Mr. Garett asserts that he repeatedly contacted Mr. Fleck, stating that plaintiff was interested in participating in the procurement and asking when the solicitation would be posted. Moreover, Mr. Garett claims to have monitored publicly available Internet resources for the solicitation. Similarly, in his declaration, Mr. York also claims to have spoken with Mr. Fleck, who confirmed that the DLA's hardware and software support contracts would be consolidated, and invited plaintiff to participate in the procurement. Mr. York further avers that he informed Mr. Fleck that plaintiff is a small business, and that it does not charge reinstatement fees. In addition, Mr. York asserts that he offered to extend plaintiff's contract with the DLA while the DLA focused its efforts on procuring the consolidated contract, but that the DLA did not respond to his offer. Furthermore, Mr. York states, plaintiff was never provided a copy of the solicitation for the consolidated procurement. Finally, Mr. York asserts his belief that the software and hardware contracts did not need to be consolidated. Plaintiff argues that the contents of the six electronic-mail messages and the two declarations demonstrate that plaintiff expressed its interest in participating in the procurement, and that the DLA was aware of its interest. Further, plaintiff contends, the declarations indicate that there was no need to consolidate the contracts.

---

[9] Plaintiff's motion and legal memoranda are laced with unsupported allegations of bad faith on the part of the DLA. For example, plaintiff argues that the DLA "disguised the true nature of th[e] procurement," which, plaintiff avers, was to purchase hardware maintenance services. Pl.'s Reply 17. In addition, plaintiff claims that the solicitation was "designed to exclude Plaintiff as a potential offeror," Pl.'s Mot. 25, and that the "OEM appears to have had a hand in designing the SOW," id. at 25 n.8. Plaintiff also asserts that the DLA reassured plaintiff that it could compete during the procurement but failed to provide it with a copy of the solicitation. Id. at 28. Despite these bald allegations, plaintiff never fleshed out the specifics of its claim of bad faith on the part of the DLA. Indeed, when specifically asked during oral argument if plaintiff was advancing such a claim, plaintiff's counsel conceded that plaintiff was not, and that plaintiff had no evidence to support it. Oral Argument at 2:32:15.

In addition, plaintiff seeks discovery to obtain (1) communications between the DLA "and other interested parties" before the solicitation was provided to Affigent, Pl.'s Disc. Mot. 2; (2) "all documents relating to the IGCE," id. at 10; (3) "a further explanation of Defendant's choice to include and require [that] software maintenance be performed under the same contract as hardware maintenance," id. at 11; and (4) "all descriptive information provided in the GSA e-Buy posting to explain how the public was notified of the contract opportunity," id. at 12. Plaintiff argues that this discovery would provide "necessary information identifying the Contracting Officer's knowledge of prospective offerors beyond Oracle resellers." Id. at 9. In response, defendant argues that the documents and information that plaintiff seeks are "not essential for effective judicial review." Def.'s Disc. Resp. 1.

Finally, defendant moves to strike Mr. Garett's and Mr. York's declarations, arguing that the declarations include statements of "purported fact and opinion regarding CHE's previous experience providing Oracle hardware maintenance services" for the DLA, none of which is properly part of the administrative record. Def.'s Mot. to Strike 1. Defendant further contends that the declarations detail the communications between plaintiff and the DLA regarding the procurement; contain allegations that reinstatement fees included in the bill of materials for the procurement are punitive actions taken by Oracle against customers; include assertions that software support was not critical for the contract and that the SOW included inappropriate line items, thus indicating that it was "set by" Oracle; and contain contentions that the wrong NAICS code was used when posting the award. Id. at 1-2. According to defendant, this extrarecord evidence is irrelevant and unnecessary for judicial review. Id. at 2-3. Further, defendant argues, the opinions offered in the declarations lack a reasoned basis and constitute improper expert opinion. Id. at 4. In response, plaintiff contends that the declarations provide information that is necessary for the court's effective review of the protest. Pl.'s Resp. to Def.'s Mot. to Strike 1. Specifically, plaintiff contends, the declarations supply relevant communications between the parties leading up to the procurement, offer support for the "harm caused to Plaintiff by its unlawful exclusion," and provide factual information concerning certain line items included in the solicitation and the NAICS code used to post it. Id.

Plaintiff's motion to supplement the administrative record is without foundation. The court's review in a bid protest is limited to the administrative record. As described earlier, supplementation of the administrative record should be allowed only in cases in which the omission of extrarecord evidence precludes effective judicial review. Clearly, the six electronic-mail messages, as well as the two declarations, were neither before nor considered by the contracting officer and thus played no role in this procurement. Therefore, the court is not precluded from conducting a meaningful review in their absence. Indeed, the only evidence that the documents provide is a demonstration that the DLA's Program Management Office knew that plaintiff was interested in an Oracle hardware maintenance service contract. Consequently, because there is no gap in the administrative record, there is no basis for its supplementation with the electronic-mail messages and declarations offered by plaintiff.

Further, the court finds discovery unnecessary in this case. Indeed, plaintiff fails to show how the discovery it seeks would demonstrate a violation of a statute or regulation. Rather, the discovery that plaintiff requests pertains primarily to legal issues resolved by this motion. For

example, allegations that the DLA violated the CICA by publishing the solicitation under an incorrect NAICS code, that the DLA was obligated to advise plaintiff of the issuance of the solicitation and provide plaintiff with a copy of the solicitation, and that the DLA violated the rules pertaining to bundling are all legal issues, not fact issues.  Moreover, to the extent that plaintiff seeks discovery based upon innuendos of bad faith, plaintiff's request must be denied for two reasons.  First, merely hinting at bad faith falls short, as "[g]overnment officials are presumed to act in good faith, and 'it requires "well-nigh irrefragable proof" to induce a court to abandon the presumption of good faith dealing.'"[10] T & M Distribs., Inc. v. United States, 185 F.3d 1279, 1285 (Fed. Cir. 1999) (quoting Kalvar Corp. v. United States, 543 F.2d 1298, 1301-02 (Ct. Cl. 1976)); see also Impresa, 238 F.3d at 1338 (explaining that agency decisions, including those of contracting officers, are entitled to a presumption of regularity "unless that presumption has been rebutted by record evidence that the agency decision is arbitrary and capricious").  Second, plaintiff's counsel conceded at oral argument that plaintiff is not alleging bad faith in this procurement, despite allegations that suggest such a claim.  Accordingly, plaintiff's motion for leave to conduct discovery and to supplement the administrative record is denied, and defendant's motion to strike is granted.

## IV.  CONCLUSION

In sum, the court finds that plaintiff has standing to challenge the lawfulness of the DLA's decision to consolidate its hardware and software contracts, but that its challenge is not meritorious.  Further, the court finds that plaintiff lacks standing to bring its remaining challenges to the procurement because plaintiff did not have a substantial chance of receiving the contract.  Finally, even if plaintiff had standing, the court finds that plaintiff's allegations of error lack merit.  Accordingly,

- Defendant's motion to dismiss in part for lack of standing, pursuant to RCFC 12(b)(1), is **GRANTED**.

- Plaintiff's motion for judgment on the administrative record is **DENIED**.

- Defendant's cross-motion for judgment on the administrative record is **GRANTED**.

- Plaintiff's motion for leave to conduct discovery and to supplement the administrative record is **DENIED**.

- Defendant's motion to strike the declarations attached to plaintiff's motion for judgment on the administrative record is **GRANTED**.

No costs.  The clerk is directed to enter judgment accordingly.

---

[10] Indeed, the contracting officer submitted a declaration in which he states, among other things, that he was not aware that plaintiff had expressed interest in being notified of the procurement.  AR 346 at ¶ 4.

The court has filed this ruling under seal.  The parties shall confer to determine agreed-to proposed redactions.  Then, by **no later than Tuesday, March 15, 2016**, the parties shall file a joint status report indicating their agreement with the proposed redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated.**

      **IT IS SO ORDERED.**

                             s/ Margaret M. Sweeney
                             MARGARET M. SWEENEY
                             Judge